

2005 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

4-12-2005

# Wyatt v. Keating

Precedential or Non-Precedential: Non-Precedential

Docket No. 04-2753

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2005

Recommended Citation

"Wyatt v. Keating" (2005). *2005 Decisions.* Paper 1375.
http://digitalcommons.law.villanova.edu/thirdcircuit_2005/1375

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2005 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

———

No. 04-2753

———

WESLEY K. WYATT, ANNA WYATT; THE FINANCIAL GREENHOUSE,

Appellants

v.

TERRANCE A. KEATING; JEFFERSON PILOT INSURANCE COMPANY;
AMERICAN NATIONAL (LEGACY) INC.; LIFE USA (ALLIANCE) INC.;
JOHN DOE

———

On Appeal from the United States District Court
for the Middle District of Pennsylvania
(D.C. No. 03-cv-00726)
District Judge: Honorable Sylvia H. Rambo

———

Submitted Under Third Circuit L.A.R. 34.1(a)
March 11, 2005
Before: SCIRICA, ROTH, and FUENTES, Circuit Judges.

(Filed April 12, 2005)

OPINION OF THE COURT

———

FUENTES, Circuit Judge.

Wesley K. Wyatt, Anna Wyatt, and The Financial Greenhouse appeal the District

Court's dismissal of their civil rights claims on statute of limitations grounds. Specifically, they assert (1) that the District Court erred in finding that there was no duty to exhaust administrative remedies with respect to an insurance license revocation before filing suit in federal court under 28 U.S.C. § 1983 and (2) that the District Court erred in refusing to consider their Rooker-Feldman argument that was first raised in a motion for reconsideration. Because we find that both of these arguments are without merit, and that dismissal of the claims was warranted, we affirm.

## I.

Wesley K. Wyatt applied for and received a license to sell insurance from the Pennsylvania Insurance Department (the "Department") in 1992. As required by the application, he disclosed an Oklahoma guilty plea to four criminal contempt counts for which he served eighteen months in prison. He also provided a letter from the Oklahoma Insurance Commissioner, in which the charges to which Wyatt pled guilty are described as misdemeanors. In 1999, a Pittsburgh television station raised questions as to why Wyatt was issued a license, noting that the contempt charges appeared to be felonies and that relevant Pennsylvania insurance law allowed the Department to refuse to issue a license to a recent felon. As a result of this media attention, the U.S. Attorney for the Western District of Oklahoma provided a letter to the Pennsylvania Insurance Department, advising the Department that the contempt charges were felony charges. Wyatt's license was subsequently revoked in September 2000 by the Department, on the grounds of his felonies.

Wyatt appealed the revocation and won in the Commonwealth Court, because the court found that, although the contempt charges could properly be characterized as felonies, the Department was estopped from revoking the license under the doctrine of laches because of its failure to act with due diligence in investigating the original application.

Wyatt filed this § 1983 action in April 2003 against the head of the Insurance Department, Terrence A. Keating, and three insurance companies that dismissed Wyatt as an agent after his license was revoked.[1] The complaint alleged violations of the First, Fourth, and Fourteenth Amendments and the Commerce Clause arising from claims of malicious prosecution and interference with the right to do business and freely choose one's profession. It also alleged state law claims of tortious interference with contractual relations. All of the defendants moved for dismissal of the complaint or, in the alternative, for summary judgment in their favor. The District Court held that all of the claims were time-barred, and granted the motions to dismiss. It found that, in § 1983 actions, the statute of limitations is that of personal injury actions in the state in which the alleged violations occurred, and that the limitations period in Pennsylvania is two years. After determining that the revocation gave notice of the existence of the claims filed, the District Court found that the claims accrued in September 2000. The District Court held that a federal court would not have abstained

_____

[1] The companies allegedly also ceased dealings with Anna Wyatt, the wife of Wesley Wyatt and a co-plaintiff in this case, because they both worked for The Financial Greenhouse (another co-plaintiff), which is essentially owned and run by Anna Wyatt. In this opinion, "Wyatt" will hereafter be used to refer to Wesley Wyatt, although the discussion applies with equal force to whatever claims Anna Wyatt and The Financial Greenhouse may have.

3

from hearing the § 1983 suit during the pendency of the state appeal in refusing to toll the limitations period. Wyatt's continuing violation argument, under which he suggested that the state's violations continued until the present, making the action timely, was rejected because that doctrine focuses on the injurious acts rather than the resulting harm. Finally, the District Court found that the state tortious interference claim was also governed by a two-year statute of limitations, running from the revocation. Accordingly, the District Court dismissed all of the claims, but allowed Wyatt to amend his complaint to state more specifically a claim arising from the Department's alleged refusal to reinstate his license after the Commonwealth Court reversed the revocation.[2]

Wyatt moved for reconsideration, arguing that the Rooker-Feldman doctrine, which bars federal courts from reconsidering final state decisions made on the merits, required the District Court to find that his claims were filed in a timely manner. The District Court held that the argument was waived, because Wyatt did not raise it in any prior papers even though he had all of the facts necessary to make the argument.

Wyatt appeals from the District Court's dismissal of his claims.

## II.

Wyatt makes two specific challenges on appeal, along with general rhetorical

---

[2]Wyatt amended his complaint to focus on the Department's alleged refusal to reinstate his license and its refusal to return the $1000 fine levied upon him. The District Court granted summary judgment in favor of the defendants, finding that no genuine dispute existed with respect to the material evidence and that no reasonable trier of fact could find that the Department refused to reinstate the license or that the Department actually collected the civil fine.

4

challenges to the District Court's orders. First, he argues that his § 1983 claims did not accrue until after the completion of his state appeals because he had a duty to exhaust his available state remedies before proceeding to federal court. Second, he argues that the Rooker-Feldman doctrine would have prevented a federal court from ruling on the state-law issues that must necessarily be decided in order to evaluate his federal claims. Each of these arguments is considered in turn.

## A. The Alleged Exhaustion Requirement

The District Court found that statute of limitations might be tolled (or, alternatively, that the date of accrual might be tolled) for a federal claim if a federal court would not exercise jurisdiction over the claims until the conclusion of on-going state proceedings or the exhaustion of available remedies. Accordingly, it looked to whether a district court would have abstained from hearing Wyatt's § 1983 suit during the pendency of his state appeal under Younger v. Harris, 401 U.S. 37 (1971) and its progeny.[3]

As recognized by the District Court, the Supreme Court has noted that, in some cases, exhaustion of state administrative remedies is not required before bringing § 1983 claims in federal court. See Ohio Civil Rights Comm'n v. Dayton Christian Sch., Inc., 477 U.S. 619, 627 n.2 (1986). In finding that exhaustion was required in the case before it, the Court stated:

_____

[3]Although Younger dealt with federal court abstention in the face of on-going state criminal actions, it has been applied to administrative proceedings. See Middlesex County Ethics Comm. v. Garden State Bar Ass'n, 457 U.S. 423 (1982).

5

The application of the Younger principle to pending state administrative proceedings is fully consistent with Patsy v. Florida Board of Regents, 457 U.S. 496 (1982), which holds that litigants need not exhaust their administrative remedies prior to bringing a § 1983 suit in federal court. Unlike Patsy, the administrative proceedings here are coercive rather than remedial, began before any substantial advancement in the federal action took place, and involve an important state interest.

Id. (emphasis added). In elaborating on the coercive-remedial dichotomy, we have noted:

The critical distinction between Dayton Christian Schools and Patsy is that Patsy involved a remedial action brought by the plaintiff to vindicate a wrong which had been inflicted by the State. In contrast, Dayton Christian Schools involved an administrative proceedings initiated by the State, before a state forum, to enforce a violation of state law. That is, in Dayton Christian Schools, the action taken by the Ohio Civil Rights Commission was coercive rather than remedial, just as the action taken by the City of Philadelphia, to enforce its traffic tickets against O'Neill and Goodman, was coercive action which the plaintiffs sought to circumvent by filing their complaint in federal court.

O'Neill v. City of Philadelphia, 32 F.3d 785, 791 n.13 (3d Cir. 1994). The District Court found that the appeals process that Wyatt initiated in order to get his license reinstated was a remedial process, because it was initiated by Wyatt at his own option to remedy a perceived wrong by the state–the revocation of his license. It was not coercive because it was not instituted by the state to penalize an alleged violation of law by Wyatt. Accordingly, the District Court found that a federal court would not have abstained under Younger if Wyatt had brought his claims immediately after the revocation and it refused to toll the limitations period. We see no error in this analysis. Wyatt's "argument" about how the District Court's analysis is unfair due to its complexity and ambiguity is unfounded. Here, a plaintiff in Wyatt's situation could have filed his § 1983 claim in

6

federal court immediately after discovering the alleged constitutional violations and then the District Court could have dismissed the claims without prejudice or stayed proceedings while the plaintiff pursued his state remedies if abstention was found to be required.[4]

## B. The Rooker-Feldman Doctrine

Wyatt concedes that he failed to raise his Rooker-Feldman argument until after the District Court first ruled on his claims, but he argues (with counsel citing to his extensive experience with respect to sanctions) that the District Court went too far in refusing to consider the argument. He asserts that it was clearly raised in a timely fashion because it was raised during "motion practice on the amended complaint." However, although the District Court allowed Wyatt to amend his complaint with respect to the alleged refusal to reinstate the license, that has no bearing on the timeliness of an argument made with respect to a statute of limitations issue already briefed before and decided by the District Court. Although "reconsideration is the appropriate means of bringing to the court's attention manifest errors of fact or law," Max's Seafood Café ex rel. Lou-Ann, Inc. v. Quinteros, 176 F.3d 669, 678 (3d Cir. 1999), "[c]ourts often take a dim view of issues raised for the first time in post-judgment motions" and "[g]enerally, this is a decision

---

[4]The policy behind Younger is to prevent federal court interference with state actions involving important state interests, in order to foster comity. It is unclear that the Younger principles would even come into play here, as the state action concerned whether the license was properly revoked, while the claims asserted in this federal action appear to focus on the improper motives of the head of the Department and three private insurance companies.

within the sound discretion of the district court," Kiewit E. Co. v. L&R Const. Co., 44 F.3d 1194, 1204 (3d Cir. 1995). Wyatt offers no reason for us to find that the District Court abused its discretion in finding the argument waived. See Pittston Co. Ultramar Am. Ltd. v. Allianz Ins. Co., 124 F.3d 508, 519 (3d Cir. 1997) (citing Kiewit in refusing to consider an argument first raised in a motion for reconsideration).

It is worth noting that it is unclear from Wyatt's brief how the Rooker-Feldman doctrine would provide him any relief from the statute of limitations problem. The doctrine "prohibits District Courts from adjudicating actions in which the relief requested requires determining whether [a] state court's decision is wrong or voiding [a] state court's ruling." Walker v. Horn, 385 F.3d 321, 329 (3d Cir. 2004) (quotation omitted). It acts as a jurisdictional bar; it does not relate to statutes of limitations.

### C. The Malicious Use of Process Claim

We note that it appears that the District Court erred in finding that Wyatt's Fourth Amendment malicious use of process claim, insofar as he stated such a claim,[5] accrued at the time Wyatt's license was revoked. We have previously held "that a claim of malicious use of process may state a Section 1983 claim if it includes the elements of that common law tort as it has developed." McArdle v. Tronetti, 961 F.2d 1083, 1088 (3d Cir.

---

[5]Under the "Rights Violated" section of Wyatt's complaint, he asserts that he "has a federally guaranteed right under the 4th Amendment not to be maliciously and improperly prosecuted." Although, as stated, this appears to state a malicious prosecution claim, which is usually made with respect to criminal charges, we will interpret the claim as a malicious use of civil process claim.

8

1992).  "[U]nder the Pennsylvania statute codifying this tort, a defendant may not be found liable unless . . . [t]he proceedings have terminated in favor of the person against whom they are brought."  Id.  Because favorable termination is a necessary element of his § 1983 claim, Wyatt neither knew nor had reason to know of the injury that constituted the basis of his action until such termination.  Rose v. Bartle, 871 F.2d 331, 349 (3d Cir. 1989).  Accordingly, that claim did not accrue under federal law until the Commonwealth Court reversed the license revocation.  Id.  However, Wyatt does not allege this error in his brief, and it could therefore be considered waived.

In any case, it is well understood that "[t]he first step in any such claim is to identify the specific constitutional right allegedly infringed."  Albright v. Oliver, 510 U.S. 266, 271 (1994).  Albright requires a violation of an explicit constitutional protection in order to support a § 1983 claim.  See id. at 275 (holding that substantive due process, "with its scarce and open-ended guideposts," cannot be used to support a § 1983 suit for malicious prosecution (quotations omitted)).

Given that Wyatt would have to show violation of a textually rooted constitutional right, his claim was correctly dismissed on its face.  Wyatt alleges a Fourth Amendment right to be free from malicious prosecution.  However, this Court has read Albright as rejecting such a broad right to be free from prosecution without probable cause, instead requiring "a deprivation of liberty accompanying the prosecution" in order to use the Fourth Amendment.  Gallo v. City of Philadelphia, 161 F.3d 217, 222 (3d Cir. 1998).

Additionally, Wyatt's alleged rights under the First Amendment "to do business and to associate," under the First and Fourteenth Amendments to "pursue his chosen profession," and under the Commerce Clause to "further his business ends" do not find any support in the case law.[6] Hence, the District Court correctly dismissed the malicious use of process claim, as Wyatt fails to allege adequately a specific constitutional violation to support a § 1983 claim.

Finally, Wyatt's malicious use of process claim is likely facially deficient because it does not appear that Keating actually instituted any "civil proceeding" against Wyatt. The Western District of Pennsylvania considered this issue:

> A proceeding is defined in Pennsylvania as "every declaration, petition or other application which may be made to a court under law or usage or under special statutory authority, but . . . not an action or an appeal." Following [the zoning officer's] letter, it was the Plaintiffs who appealed to the Zoning Board and then to the Court of Common Pleas. The tort of wrongful use of legal proceedings arises "when a party institutes a lawsuit with a malicious motive and lacking probable cause." "The essence of the tort of wrongful use of civil proceedings is the institution of a civil action for a malicious purpose and without probable cause." In this case, there is no allegation of

_____

[6]This Court has alluded to substantive due process being a sufficient hook for civil malicious use of process claims. See Herr v. Pequea Township, 274 F.3d 109, 118 (3d Cir. 2001). However, the substantive due process standard employed in Herr, looking to whether the state actor acted with an "improper motive," has been rejected as irreconcilable with the "shocks the conscience" standard. UA Theatre Circuit v. Township of Warrington, 316 F.3d 392, 400 (3d Cir. 2003). Substantive due process does not appear to provide a constitutional right to be free from civil suits filed without just cause. See Merkle v. Upper Dublin Sch. Dist., 211 F.3d 782, 792 (3d Cir. 2000) (noting that this Court read Albright as allowing § 1983 malicious prosecution claims "based on a constitutional provision other than the Fourth Amendment . . . so long as it was not based on substantive due process").

a civil proceeding, and therefore we do not and cannot infer that the City Defendants initiated or continued a civil proceeding for a malicious purpose. We therefore dismiss this claim against the City Defendants.

Pellegrino Food Prods. Co. v. City of Warren, 136 F. Supp. 2d 391, 406 (W.D. Pa. 2000) (quoting 42 Pa. Cons. Stat. Ann. § 102 and Rosen v. Am. Bank of Rolla, 627 A.2d 190, 191 (Pa. Super. Ct. 1993), respectively). Similarly, here Keating initiated an investigatory process within the Department resulting in the revocation of Wyatt's license, and it was Wyatt who appealed that decision to the court system. Thus, under the definition of "proceedings," it appears that Wyatt cannot state a claim. We have considered the remainder of Wyatt's arguments and conclude that they are without merit.

**III.**

For the reasons discussed above, we affirm the decisions of the District Court.