NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 16-3753
_____

STACY PARKS MILLER,
                                        Appellant
v.

COUNTY OF CENTRE, A GOVERNMENT AGENCY OF
THE COMMONWEALTH BY ITS BOARD OF COMMISSIONERS;
MICHELLE SHUTT, IN HER INDIVIDUAL CAPACITY;
PHILIP M. MASORTI, IN HIS INDIVIDUAL CAPACITY;
BERNARD F. CANTORNA, IN HIS INDIVIDUAL CAPACITY;
ANDREW SHUBIN, IN HIS INDIVIDUAL CAPACITY;
SEAN MCGRAW, IN HIS INDIVIDUAL CAPACITY;
PAMELA RUEST, IN HER INDIVIDUAL CAPACITY;
TIMOTHY BOYDE, INDIVIDUALLY AND IN HIS OFFICIAL CAPACITY;
LOUIS T. GLANTZ, INDIVIDUALLY AND IN HIS OFFICIAL CAPACITY;
C. CHRIS EXARCHOS, INDIVIDUALLY AND IN HIS OFFICIAL CAPACITY;
STEVEN DERSHEM, INDIVIDUALLY AND IN HIS OFFICIAL CAPACITY;
MICHAEL PIPE, IN HIS OFFICIAL CAPACITY ONLY
_____

On Appeal from the United States District Court
for the Middle District of Pennsylvania
(D.C. No. 4-15-cv-01754)
District Judge: Matthew W. Brann
_____

Argued May 22, 2017
Before: HARDIMAN, ROTH, and FISHER, *Circuit Judges*.

(Filed: August 2, 2017)

Bruce L. Castor, Jr. [Argued]
Rogers Castor
26 East Athens Avenue
Ardmore, PA 19003
    *Counsel for Plaintiff-Appellant Stacy Parks Miller*

Mary Lou Maierhofer [Argued]
Margolis Edelstein
P.O. Box 628
Hollidaysburg, PA 16648
    *Counsel for Defendants-Appellees Centre County, Timothy Boyde, Louis T. Glantz, C. Chris Exarchos, Steven Dershem, and Michael Pipe*

Kathleen V. Yurchak [Argued]
Steinbacher, Goodall & Yurchak
328 South Atherton Street
State College, PA 16801
    *Counsel for Defendant-Appellee Michelle Shutt*

Stephanie G. VanHorn [Argued]
Engle Kauffman
432 Rolling Ridge Drive, Suite 3B
State College, PA 16801
    *Counsel for Defendant-Appellee Philip Masorti*

J. Timothy Hinton, Jr. [Argued]
Haggerty Hinton & Cosgrove
203 Franklin Avenue
Scranton, PA 18503
    *Counsel for Defendant-Appellee Bernard Cantorna*

Jacob C. Cohn [Argued]
Gordon & Rees
2005 Market Street, Suite 2900
Philadelphia, PA 19103
    *Counsel for Defendants-Appellees Sean McGraw and Andrew Shubin*

Michael Daley [Argued]
Supreme Court of Pennsylvania
Administrative Office of Pennsylvania Courts
1515 Market Street, Suite 1414
Philadelphia, PA 19102

Jarad W. Handelman
Elliott Greenleaf
17 North Second Street, Suite 1420
Harrisburg, PA 17101
        *Counsel for Defendant-Appellee Pamela Ruest*

_____

OPINION*
_____

HARDIMAN, *Circuit Judge*.

Stacy Parks Miller, District Attorney of Centre County, Pennsylvania, filed a 311-paragraph complaint alleging 129 claims against 12 defendants from the Centre County legal community. The District Court, performing yeoman's work, deciphered the complaint and dismissed all claims. We agree with the District Court that nearly every claim is untenable, and we will affirm its judgment as to those claims. But we will hold that the District Court erred when it dismissed a breach of fiduciary duty claim against Parks Miller's former paralegal, Michelle Shutt. As to this claim, we will vacate the District Court's judgment and remand for further proceedings.

---

* This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

3

# I

Parks Miller was elected District Attorney in 2009. In that capacity, she investigated an inmate suspected of contracting to murder one of her assistants, Nathan Boob. The investigation included a sting operation which is not fully detailed in the complaint. Part of the plan called for a "pretend bail order" to "create the impression" that another inmate, an informant, was released on bail. App. 224–25. Shutt drafted the pretend bail order.

Some ten months later, Shutt quit the District Attorney's Office. Parks Miller alleged that before Shutt quit, she forwarded e-mails about the pretend bail order from her government e-mail account to her personal one. She did this despite the confidentiality warning on the original e-mails that prohibited "[a]ny inappropriate use, distribution or copying." App. 228.

Several months after Shutt quit, she was hired by attorney Philip Masorti of the Masorti Law Group, a criminal defense firm in Centre County. Parks Miller alleged that Shutt was hired because she told Masorti that Parks Miller had forged Judge Pamela Ruest's signature on the pretend bail order. Parks Miller also alleged that after Shutt was hired she signed an affidavit about the supposed forgery and forwarded the confidential e-mails from her personal account to an account at her new firm. Masorti attached those e-mails and Shutt's affidavit to a complaint about the alleged forgery that he filed with the Bellefonte Police Department.

Masorti's complaint led to three actions relevant to this case. First, on January 16, 2015, Parks Miller requested the Pennsylvania Office of Attorney General to investigate the forgery allegations. The subsequent grand jury investigation exonerated Parks Miller of the allegations. Second, on January 20, 2015, after the allegations were discussed at a Centre County meeting, Commissioners C. Chris Exarchos, Steven Dershem, and Michael Pipe voted to appoint a special counsel to investigate whether criminal misconduct had occurred. Third, on January 24, 2015, the Bellefonte Police Department requested a warrant to search the District Attorney's Office. The President Judge of the Clinton County Court of Common Pleas, Craig P. Miller, granted the search warrant, finding probable cause based on Shutt's affidavit and a statement by Judge Ruest that she remembered neither the murder-for-hire investigation nor signing the pretend bail order. The Bellefonte Police executed the search warrant the same day.

Parks Miller later brought suit in the Centre County Court of Common Pleas against twelve defendants: (1) Shutt; (2) Masorti; (3) Judge Ruest; (4)–(9) Commissioners Exarchos, Dershem, and Pipe; Timothy Boyde, a Centre County administrator; Louis Glantz, Centre County Solicitor; and Centre County (collectively, the County Defendants); (10)–(11) Andrew Shubin and Sean McGraw, civil rights attorneys who represented Shutt during the grand jury investigation; and (12) Bernard Cantorna, a local defense lawyer.

The County Defendants removed the case to the United States District Court for the Middle District of Pennsylvania. All Defendants moved to dismiss the complaint

under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim. The District Court denied these motions as moot when Parks Miller filed an amended complaint pursuant to Federal Rule of Civil Procedure 15(a)(1)(B). Defendants filed new motions to dismiss the amended complaint. With the exception of one claim, the District Court dismissed the case with prejudice and without leave to amend. Parks Miller repleaded the single claim against the County Defendants who again moved to dismiss. The District Court granted that motion and Parks Miller timely appealed all of the orders.

II[1]

Parks Miller raised ten issues on appeal.[2] We will discuss in detail only four of the arguments while briefly addressing the remainder.

A

---

[1] The District Court had jurisdiction over the federal claims under 28 U.S.C. § 1331 and over the state claims under 28 U.S.C. § 1367. We have jurisdiction under 28 U.S.C. § 1291. "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* "We may affirm a District Court's judgment on grounds other than those considered by the District Court itself." *Hughes v. Long*, 242 F.3d 121, 122 n.1 (3d Cir. 2001).

[2] Parks Miller did not include any claims against Defendant Pipe in her opening brief. She has thus forfeited those claims. *United States v. Pelullo*, 399 F.3d 197, 222 (3d Cir. 2005).

In Count I, Parks Miller alleged Shutt breached her fiduciary duty.[3] A fiduciary duty may arise from "a confidential relationship between two parties." *PTSI, Inc. v. Haley*, 71 A.3d 304, 311 (Pa. Super. Ct. 2013) (citation omitted). Here, Parks Miller alleged that Shutt had such a duty arising from her position as Parks Miller's paralegal and agent. In Pennsylvania there are three elements of agency: "the manifestation by the principal that the agent shall act for [her], the agent's acceptance of the undertaking and the understanding of the parties that the principal is to be in control of the undertaking." *Scott v. Purcell*, 415 A.2d 56, 60 (Pa. 1980) (quoting Restatement (Second) of Agency § 1). In our view, Miller has pleaded facts from which we can infer the presence of all three elements of agency. Thus it is plausible under Pennsylvania law that Shutt, as a paralegal working under Parks Miller's control, was her agent.

Parks Miller alleged that Shutt breached her fiduciary duty by forwarding confidential e-mails before she quit the District Attorney's Office and by using those e-mails to get hired by Masorti's law firm. The District Court dismissed the claim against Shutt, noting that because the e-mails were originally sent to eleven individuals, they could "hardly be considered private property capable of being stolen." App. 178. Yet the

---

[3] Parks Miller also alleged a breach of fiduciary duty claim against Masorti, Cantorna, McGraw, and Shubin. She forfeited the claims against Cantorna, McGraw, and Shubin by failing to address them in her opening brief. *Pelullo*, 399 F.3d at 222. On appeal (and apparently in briefing below) Parks Miller recharacterizes her breach of fiduciary duty claim against Masorti as an "aiding and abetting a breach of fiduciary duty" claim. We will not consider her alternative claim here. Although we must read Parks Miller's complaint in the light most favorable to her, we will not revise her complaint to contain claims not pleaded.

number of people who receive a communication sheds no light on its confidential status. If the recipients each have an independent duty not to disclose its contents, then the e-mail remains confidential. Thus we will vacate the judgment of the District Court as to this claim.

B

In Count II, Parks Miller alleged defamation and false light, and in Count III, she alleged injurious falsehood (*i.e.*, trade libel) against each Defendant. The District Court dismissed each claim for various reasons.[4] We will affirm the District Court, but because the District Court's defamation analysis as to Shutt was flawed, we will discuss it here.

The District Court dismissed the defamation claim against Shutt, finding that she was protected under Pennsylvania's judicial privilege doctrine. The judicial privilege doctrine extends to "statements made to law enforcement officials for the purpose of persuading those officials to initiate criminal proceedings." *Schanne v. Addis*, 121 A.3d 942, 947–48 (Pa. 2015). The District Court found it disingenuous for Parks Miller to allege that "the Defendants, including Shutt, had an intent to initiate criminal proceedings against her, then, when it [did] not further her case, to allege the opposite in her briefs."

---

[4] On appeal, Parks Miller forfeited much of her argument regarding these counts. She forfeited the false light and the injurious falsehood claims by not discussing them in her opening brief. *Pelullo*, 399 F.3d at 222. For the same reason, she forfeited the defamation claims against McGraw and Boyde. And these claims are likewise forfeited against Centre County because Parks Miller failed to address the District Court's holding that the County is immune from liability under Pennsylvania's Political Subdivision Tort Claims Act.

8

App. 177. We see the District Court's point—the repeated, overarching theme of Parks Miller's complaint certainly was that Defendants operated a vast conspiracy to oust her as Centre County District Attorney.

But the District Court's reasoning was overbroad. Parks Miller alleged that Shutt defamed her to Masorti before she contemplated a criminal investigation, possibly to gain employment. Statements made with "[t]he bare possibility that [a criminal] proceeding might be instituted [are] not to be used as a cloak to provide immunity for defamation when the possibility is not seriously considered." *Schanne*, 121 A.3d at 950 (quoting Restatement (Second) of Torts § 588 cmt. e (1977)). It follows that, insofar as the complaint alleged that Shutt made statements for purposes other than to start or aid a criminal prosecution, those statements are not protected by judicial privilege.

Nevertheless, Parks Miller failed to plausibly allege Shutt defamed her. A communication may be defamatory if it will "so harm the reputation of another as to lower [her] in the estimation of the community or deter third persons from associating or dealing with [her]." *Rybas v. Wapner*, 457 A.2d 108, 110 (Pa. Super. Ct. 1983) (citation and alterations omitted). A court must look to "the effect [that the communication] is fairly calculated to produce, [and] the impression it would naturally engender, in the minds of the average person *among whom it is intended to circulate*." *Baker v. Lafayette College*, 532 A.2d 399, 402 (Pa. 1987) (emphasis added) (citation omitted). Here, Parks Miller alleged that Shutt "fabricated the forgery story" to Masorti, Cantorna, Shubin, and McGraw. App. 228. By Parks Miller's own account it is hard to imagine a group of

9

individuals who thought less of Parks Miller than those whom she characterized as jealous co-conspirators intent on ruining her. As such, it is implausible that Shutt's comments about the forgery lessened her audience's opinion of Parks Miller or deterred them from associating with her. For these reasons, we will affirm the District Court's dismissal of this defamation claim, though on alternate grounds.

C

In Counts XI, XII, and XIII, Parks Miller alleged claims under 42 U.S.C. § 1983. Only Count XIII, a claim for First Amendment retaliation alleged against the County Defendants, merits detailed discussion.[5]

To state a First Amendment retaliation claim, a plaintiff must allege "(1) that [s]he engaged in constitutionally-protected activity; (2) that the government responded with retaliation; and (3) that the protected activity caused the retaliation." *Eichenlaub v. Twp. of Indiana*, 385 F.3d 274, 282 (3d Cir. 2004). If the retaliation is a prosecution, the plaintiff must also allege a "want of probable cause." *Hartman v. Moore*, 547 U.S. 250, 252 (2006). The District Court focused its analysis on this final factor, and dismissed the

_____

[5] Parks Miller forfeited Count XI, a claim for equal protection and due process violations, by not raising it in her opening brief. *Pelullo*, 399 F.3d at 222. Count XII, a claim for privacy and due process violations, also fails. A Fourth Amendment violation requires an unreasonable seizure, *i.e.*, one made without probable cause. *Berg v. Cty. of Allegheny*, 219 F.3d 261, 269 (3d Cir. 2000). None of the Defendants was alleged to have seized Parks Miller or her property. The Bellefonte Police Department, which is not a party to this litigation, searched the District Attorney's Office. Moreover, even assuming that the Defendants orchestrated this seizure, we agree with the District Court's analysis that Parks Miller failed to plausibly plead that Judge Miller lacked probable cause to issue the search warrant.

complaint because Parks Miller failed to plead a lack of probable cause.

The District Court's analysis was insufficient: Parks Miller was not prosecuted, and therefore could not have suffered a retaliatory prosecution. At the same time, it is hard to fault the District Court for analyzing the case as a retaliatory prosecution. Parks Miller's complaint is unclear what specifically she deemed to be retaliatory. She argues generally that "[t]he above actions" (apparently the entire complaint) "involved retaliation against [Parks Miller] for exercising her First Amendment rights." App. 263.

Even if we assume for the sake of argument that some of the "above actions" were in fact retaliatory, we hold that Parks Miller failed to plausibly plead the causal link between her protected activity and the retaliation. Parks Miller's "[t]hreadbare recital[] of the elements of [the] cause of action, supported by mere conclusory statements" will not "unlock the doors of discovery" for this claim. *Iqbal*, 556 U.S. at 678.[6]

D

The only remaining claims that merit some discussion are Count IX (Concerted Tortious Conduct) and Count X (Conspiracy) alleged against all Defendants.[7] Both

---

[6] In order to state a claim under § 1983 against Centre County, Parks Miller was required to allege the County had a custom or policy of First Amendment retaliation. *See Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978). Parks Miller made no such allegation and thus failed to state a claim against the County.

[7] Parks Miller's other claims can be disposed of summarily. Count IV (Malicious Prosecution) is untenable because Parks Miller failed to allege there was any criminal prosecution. *See Tomaskevitch v. Specialty Records Corp.*, 717 A.2d 30, 33 (Pa. Commw. Ct. 1998). Neither the Office of Attorney General investigation (initiated by Parks Miller)

11

causes of action require an underlying tort or civil cause of action. *See* Restatement

(Second) of Torts § 876 (1979) (Concerted Tortious Conduct); *Weaver v. Franklin Cty.*,

918 A.2d 194, 202 (Pa. Commw. Ct. 2007) (Conspiracy). After dismissing the underlying

claims against each Defendant, the District Court dismissed the concerted tortious

conduct and conspiracy claims as well. Parks Miller's sole argument on appeal is that the

District Court erred in dismissing the underlying claims. Based on the preceding analysis,

we will affirm the District Court's orders dismissing all of the underlying claims except

the breach of fiduciary duty claim against Shutt. Accordingly, we will affirm the District

Court as to the concerted tortious conduct and conspiracy claims as to those Defendants.

We will also affirm the District Court as to the concerted tortious conduct and conspiracy

claims against Shutt because Parks Miller failed to plausibly plead that Shutt acted in

concert with other Defendants to breach her fiduciary duty.

\*     \*     \*

nor the appointment of counsel to determine if criminal charges should be filed, was a criminal prosecution. Count V (Common Law Abuse of Process) fails because Parks Miller did not plead that legal process was used against her "primarily to accomplish a purpose for which it [was] not designed." *Rosen v. Am. Bank of Rolla*, 627 A.2d 190, 192 (Pa. Super. Ct. 1993) (quotation omitted). Count VI (Negligence) was waived. Reply Br. 30 n.15. Count VII (Legal Malpractice) fails because Solicitor Glantz did not represent Parks Miller. *See* 16 Pa. Stat. § 902. Count VIII (Intentional Infliction of Emotional Distress/Negligent Infliction of Emotional Distress) fares no better. Parks Miller waived her NIED claims. Reply Br. 30 n.15. And because she failed to allege she suffered physical harm, her IIED claim fails as well. *See Reedy v. Evanson*, 615 F.3d 197, 231 (3d Cir. 2010). Finally, we note that because the underlying claims against Judge Ruest were dismissed for independent reasons, we need not opine whether the District Court erred in finding she was entirely immune from suit based on the doctrine of judicial immunity.

12

In sum, we will vacate the District Court's judgment as to the breach of fiduciary duty claim against Michelle Shutt. The case will be remanded for further consideration of this claim, and the judgment of the District Court will be affirmed in all other respects. Having affirmed the dismissal of the federal claims, we leave to the discretion of the District Court the decision whether to exercise supplemental jurisdiction over the surviving state law claim.